We have six cases on our docket this morning. One will be taken on the briefs. We'll start with 24-6139-4141, Black Emergency Response Team v. Drummond. Good morning, Your Honors, and may it please the Court, my name is Emerson Sykes, and I'm here on behalf of plaintiffs who are teachers and students in Oklahoma public schools. I'd like to reserve a couple of minutes for rebuttal, if I may. I'd like to start with a brief opening and then move to our vagueness claims and then our First Amendment claims, but of course I'm here to answer your questions. We're here on cross-appeal because the District Court found that some, but not all, of HB 1775, the act in question, is unconstitutionally vague. And we are here to ask you to finish the job. This Court should hold that we are likely to succeed on the merits of our arguments that the law is unconstitutionally vague in its entirety, and to both recognize and vindicate students' First Amendment rights. But the central question before this Court is, what does it mean to make part of a course eight prohibited concepts? And the answer is it's impossible to know. Our clients and teachers across the state have no notice as to what kind of conduct, what kind of teaching will lead them to be held in violation of the law and what kind of teaching is accepted. Can you give us an example with any of the eight where the teacher would want to do something and was uncertain whether or not it was within this realm? Sure, Your Honor. For all of the eight, the question is, what does it mean to make any of those concepts a part of a course? And so teachers don't know whether, if they assign a book that might include the idea, whether that means you have made that idea a part of a course, or if it's... Be more specific, though. We're talking about exact language, and there's exact language. The first one, one race or sex is inherently superior to another race or sex. This says you're not allowed to have that part of a course. And so what would be an instance where a teacher used materials that were part of the course that were for one race or sex is inherently superior to another race or sex? Your Honor, that was a widely held belief for a long time. Okay. I understand that. I agree with that. But still, the question is more precise, which is, can you give me one example where that would happen? And a teacher would be like, I don't know if I can do that or not. If a student asks, why was there slavery? A teacher might reply because some people believe that one race was inherently superior to another. Okay. But that's not the same thing as teaching that. I'm not sure, Your Honor. I think if you say it as a part of an answer to a student who's asking a question about what happened, I submit that is very clearly made a part of a course. I think any sort of narrow interpretation requires rewriting the law. That is what the district court did. What about this interpretation? The interpretation that the word is is really important here. That one race or sex is inherently superior to another race or sex. Now I can see where if a teacher came in and said, today's lesson, children, is that whatever race is superior to whatever else race. That fits. But if a teacher comes in and says, Hitler thought that one race was superior to other races, I don't see how that fits. Because the lesson isn't that that is in fact so. Your Honor, your narrow reading is not how the state is enforcing the law. The state is not only holding folks liable if they explicitly say the words that are in the statute. In fact, they held that the Tulsa School District was liable because the spirit of the training violated the law and they admitted that there were no express statements that included any of the eight prohibited concepts. Why don't you describe that training? Why don't you describe that training? Let us know what the training was that they said was prohibited. It sounded problematic to me. Why don't you describe it? Well, the training included a variety of exercises that, you know, the merits of the individual training are not necessarily the reason that I brought it up. No, no, but you said this could be interpreted and they're interpreting it very wildly. And there's only been three cases that are mentioned. One was a teacher who announced that she was a walking violation of the statute. The other two were school systems that then revised things. But the things that were done that brought attention to those two school districts are not the type of things you're describing. Why don't you describe it? Let's get that on the appellate record here. Yes, Your Honor. The school district in Tulsa engaged in a variety of exercises that encouraged folks to decide, look at the racial impact of their presence. I will just point out- Was that the privilege walk? That was in Mustang County, Your Honor. But I would point out that the training, the teacher training, was not a part of a course. So going back to Judge Moritz' question about, well, making part of a course seems quite narrow, they enforced it against the school district for a teacher training, which was not, in fact, making anything a part of a course. So, you know, we're not here to defend the merits of, we don't represent Mustang, we don't represent Tulsa, and we don't represent Ms. Boismeier. But we do represent teachers who are going to be subject to the same sort of analysis by the State Department of Education. There are lots of procedures involved in this. There's a warning to the school district, they're put on suspension eventually, perhaps, and then after no school district has been relieved of its responsibilities under this statute, no teacher has lost a license, the teacher cannot, at least as far as the record we have shows, maybe you have other information. There was, to be suspended, it must be a willful violation, there are all sorts of ways to work through this without having someone say, this is too vague, so we're just going to  A point of clarification, Your Honor. Pardon? Yes, the teacher did have her license revoked. Yeah, the one who said, I'm a walking violation, that's pretty good evidence it was intentional. The willfulness applies only to the revocation, not to the suspension. Just to correct, clarify that point. So there is no scienter requirement in the statute, and there is no scienter requirement to have your license suspended. So our clients do not know whether a parent or a student or anybody else who might have a reporting, who might report them, might hear that they have made part of a course by responding to a student's inquiry, and they're not sure, based on the evidence of how the state is interpreting and enforcing this law, how far they can go. What Judge Phelps was pursuing, which I endorsed that pursuit, was give us an example of a problematic situation. It hasn't happened, it's been in effect for six years now, four years, this statute, and you're speaking very abstractly that these words could be misinterpreted. I think that could be said of almost any statute. It could certainly be said of the Equal Protection Clause of the 14th Amendment. So convince us that this is really a problem. Your Honor, there can be no doubt that the law is in effect, and that the state is actively enforcing the law. So then the question is, when you look in the four corners of the law, is it clear what it means? And we submit it is not. Because our clients want to teach about race and sex in the world around them. They want to teach literature that includes themes about race and sex. They want to teach about the historical existence of these ideas, but also current. Of course, all that is part of the, sort of the exception, or the safe harbor rule. How does that safe harbor rule fit into your argument? Does it make the vagueness worse, or does it, I'm assuming that's your argument, but the teachers do know, and that is statutory, that they can teach about these certain concepts. And then over here, you have this language saying you can't teach about these certain concepts, but should they feel comfortable? Shouldn't they feel comfortable knowing that no one has been prosecuted for the safe harbor concepts, as far as we know? Your Honor, we think the safe harbor is a bit of a misnomer. The fact that we haven't seen more prosecutions, I think, proves Justice Alito right, when he said, when there are vague laws, people have no choice but to steer far clear of that conduct. So teachers, the fact that we haven't seen more prosecutions, I think, is because of the chilling effect that we have seen. Teachers are avoiding these topics on a day-to-day basis. And the fact that the Oklahoma academic standards, in broad terms, set benchmarks for each grade level. They don't include lessons, they don't include ideas, they don't include books or anything. It's just a broad outline for the kinds of learning targets that need to be achieved. It's not just that. I'm looking at the Oklahoma academic standards, social studies, and it is replete with things like forced Indian removal, Tulsa race riots, post-war economic developments, immigration reform, criminal justice reform, American imperialism. In other words, I don't think, and all of those conditions are subject to this. But your honor, if it's true that these Oklahoma standards sort of counterbalance everything in the law, it's not clear what's left of the law. Because how can one discuss these things? You mentioned this very brief list of topics. But how can one give appropriate detail to what these concepts actually mean, without running afoul of the concepts within HB 777? My answer is to read the statute plainly, the plain language of the statute. And who I think would have a problem with the plain language of this statute is the Aryan nation, or someone who wants to come in and teach that. That whites are superior or something, would be in violation of this statute. But a social study teacher who is talking about the Aryan nation, or some other group that takes these views, I think that's completely fair game in the school, and I think the standards back that up. So I'm not sure that I see the same problem that you do as far as vagueness, and I don't know how you'd ever fix it, if that's a problem. Your honor, if you're inclined to read the statute so narrowly, of course, none of our clients are actively trying to promulgate the ideas of the Aryan nation, or should they? We don't think that that is, that the language of the statute is readily susceptible to such a narrow reading. But if your honor does decide, and that is not the reading that the state of Oklahoma has read, but if your honor is inclined to take that reading, that would provide comfort to our clients who don't have now. What's your definition of a narrow reading? All I'm doing is reading what the language says. Your honor, I think it's a narrow reading of make part of a course to say that it's active promotion and endorsement. Making part of, a lot of things are a part of a course that a teacher doesn't necessarily personally believe. So if we're saying that make part of a course means to stridently, affirmatively promulgate these ideas, that's how the district court, we say in an abuse of discretion, rewrote the statute. I'll note that the Supreme Court of Oklahoma was invited to interpret the statute, and declined to do so. They said- For various reasons. For various reasons, yes. Including the fact that there is not a dispute about sort of two ways of reading the law, but about whether the law is vague at all, and we think that that question is for you. So- Also because it was not happy that the district court had decided the issue, and then was certifying to the Supreme Court. It was an unusual posture. It was a strange situation, and I wouldn't read too much into the Oklahoma Supreme Court decision. But may I ask you, because it's concerning if this is chilling teachers from doing things. What relief can teachers get now? Couldn't, instead of bringing this suit, could you have brought a declaratory judgment that your clients want to teach this, want to have this sort of discussion, and we'd like to make clear that that's not a violation of the statute so they can pursue it? Could they have done that? Or is there something, some administrative way of clarifying what the statute means? There may have been, your honor. I think our case was properly filed, and were properly before you. I think there is vagueness throughout the law. It is not just one question that they need clarified. I've focused on make part of a course, but the lists themselves are also deeply problematic. The triple negative, and D, the district court agreed that there were several parts that were already unconstitutional. But in terms of, sorry. Finish your thought. In terms of recourse, what we're asking is for this court to remove this barrier and remove the chilling effect from teachers. And the best way to do that is to enjoin the line in its entirety. The Supreme Court said we should avoid finding constitutional vagueness when the state hasn't really developed a law. If it's susceptible to have a reasonable interpretation, we should not strike it down. Maybe after the state issues some decisions, maybe if a teacher's fired, then we can get involved. But isn't the whole problem here that we haven't had a chance for this to be digested by the school districts and so on, so they have clear rules, and we would be acting a little prematurely by striking down the statute at this point? With respect, Your Honor, I don't think it's premature. This statute has been in effect since 2021. It has been enforced actively by the state since 2022. More than the three occasions? Well, we don't know. We haven't had discovery, so we don't know about all the other investigations that may happen. I see I'm almost out of time. But it's important. Yes, of course. We'll give you some time. Okay, great. But in terms of the enforcement actions, I think you have to look at what they've actually done and the findings that they've actually made. And so whatever course we could have taken or might have taken, we have to look at what we have on the record, which is a handful of enforcement actions in which the state read the statute not narrowly, not only finding violations for Aryan beliefs, but saying that if you were anywhere near, if the spirit abutted what they don't like, without any expressed statements of the prohibited concepts, you can still be held to be in violation of the law. So we ask that you enjoin it in its entirety. Thank you, Eric. Can you ask a question? No, I'm good. Thank you. Thank you for meeting. You don't have a list with the attorneys on it, do you? Mr. Flanagan? Thank you, Your Honor, and may it please the Court. My name is Will Flanagan, and I represent State Defendants in this case. This case is about the State of Oklahoma's authority to ensure that its teachers and its public schools do not endorse specific discriminatory concepts. The statute does not prohibit teaching about racism. It does not restrict the use of minority authors, and it does not even restrict teachers from presenting competing viewpoints on contemporary issues. What does it do? If you read it narrowly or exactly or whatever I do, I wouldn't see, I doubt that any teacher has ever done those things, coming in and saying one race is greater than another. So why do we even have this? It looks like it just creates a bunch of problems. Well, hopefully no teacher is going in and teaching that one race is unambiguously better than another. But what the Act prohibits is teaching these concepts as true or endorsing them. For example, the provision that an individual should be discriminated against or receive adverse treatment solely or partially because of his or her race or sex, and that's teaching or that's requiring or forbidding teachers from teaching that students should think that students or that other people should be adversely treated because of their race or sex. Has that ever happened? Has it ever been a problem? Your Honor, in the record, in the appendix, there's a declaration from the state superintendent or former state superintendent, Janet Barisi, where she notes that she's received numerous complaints from parents and students about racialized or super race conscious teachings in schools. And that's the problem. That's my concern here. Is that the overlay, the gloss on this seems to be white guilt, white privilege. And anyone who's interpreting this law is going to interpret it in that light. And so everybody's going to steer and lean just a little bit away from that. And no matter what the standards say, it's going to affect the teaching. Well, Your Honor, the text of the statute, you only violate the statute if you're teaching a specific concept as true or endorsing that concept. And as there's been discussion about the academic standards, and before the legislature laid out what the specific prohibited concepts were, it made clear that nothing that followed was to basically prohibit any teaching that's consistent with those standards. And we know from the standards that teachers are required to teach about many historical actions that involve racism, such as the Jim Crow movement, the KKK, the Nazi Party. And you can't teach about those concepts without mentioning racism or mentioning or teaching that. And say a student in response to that teaching asks a question. This is, let's say, a junior high student in a history class asks the question of implicit bias, asks the teacher about their thoughts on implicit bias and how that plays into all of this. How is a teacher to respond when they're told you cannot make part of a course, that an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or subconsciously? You're told you can't teach about implicit bias, period. We're not calling it that, but this is what we're saying. Now the teacher gets a question, and it's a question that's relevant and valid. This is not a novel concept. It's one that's been substantiated. How does the teacher respond to that question? Does the teacher say, I'm so sorry, section B of 1B doesn't permit me to answer that question because I would be making that part of the course in response to your question? How do they do that? And why wouldn't they be worried about that? Your Honor, that provision, the teacher would only be violating it by teaching a concept that, saying that that concept was true or something that students. That is not what the statute says. Your long definition of what you think makes, shall require, or make part of a course means is nowhere in the statute. The district court basically used the word teach. Well, doesn't teaching involve responding and having a discussion with students, or does it just involve a teacher preparing curriculum and preparing course materials and just standing up there and giving it out to the students? Doesn't it involve interaction with the students? And isn't that the problem here? How does a teacher have a discussion? How does a teacher respond to a question? With any lack of any definition here, and to me it means essentially to teach, and teaching certainly involves interacting and responding to students' questions and engaging them. Yes, Your Honor. Teaching does involve engaging students, and there will oftentimes be a back and forth between students and teachers. And what does that mean for that teacher that says, huh, I remember section B says I can't talk about implicit bias. Hmm. That seems to be a concept these students are really concerned about. Hmm. What do they, how would you propose they respond? The act doesn't prohibit presenting students with research on issues and saying that some people believe this, there are scholars that have done research and have, you know, come to believe or to argue that there are implicit biases. What the statute would be. The act doesn't prohibit teaching about that implicit bias as a true concept or a valid concept, one that students should understand and. It would prohibit endorsing. Certainly seems to. Section B seems pretty clear about that. You don't make that part of the course. It would prohibit teaching it as true, but it doesn't prohibit presenting students with competing viewpoints on different issues. That's your statement, but I'm asking you where would I read that if I'm reading the statute, those simple words of the statute, making it part of a course. I think most teachers would think making part of a course is the engagement with the students and responding to questions and having a discussion and trying to explain concepts. You're not. As opposed to, you know, forcing it upon them, which is what you're suggesting is not okay. I'm not saying that the act only applies to a lecture type teaching. A teacher could, for example, if asked a question that is somewhat related to one of these concepts and then in response goes on a five minute, not tangent, but a five minute kind of mini lecture endorsing or teaching this concept as true, that could fall underneath the act. What I'm saying is that. Right. And they're responding to a question. So should their answer be, hmm, I actually do think that this concept is true and valid, but I can't talk about that, so let me just tell the student I can't answer their question. I mean, how does that teacher respond and be able to sleep at night? The teacher can respond by referencing literature and research in that area. The teacher just can't say that this is true. It's something that the student should believe. And I am deriving that interpretation. That's asking a lot of teachers to make those kind of on the spot decisions during classroom discussions about, let's see, I've got some literature here I can refer them to, but I can't talk about whether it's true or not true. If so, I'm going to lose my license. That's all going to spin through their head, I take it. I think, yes. And there's, it's only eight discrete provisions that are defined. Eight very broad ones, very broad. Go ahead. The state could forbid any mention of implicit bias. That would not be a vagueness issue. That might be a First Amendment issue, that might be other questions about it. What I'm hearing is maybe there really wasn't much evidence of problems in the schools before the statute was passed and the teachers aren't, don't want to teach those things anyway, so maybe the statute was unnecessary. The question though is whether because of vagueness in the language, it chills teachers from doing things and they're being, well, they're afraid to teach certain things and they face the possibility of losing their livelihood by doing that. So the question is really how is it acting and what protections are there for teachers? If a teacher is concerned about, gee, how much can I say about implicit bias in my class? Is there a way to find out that without risking your license? I think, Your Honor, you mentioned the possibility of bringing a declaratory action. Is there anything administratively? There is room in discussions that school districts can have with the State Department of Education in figuring out how exactly they should instruct their teachers and how to approach it. And there's information in the record from school districts providing guidance to their teachers. I believe that... School districts are issuing guidance beyond the regulations in the statute? Not beyond the regulations, Your Honor, but... In addition to? To essentially give sort of guideposts and assure their teachers that they're not going to be violating the provision by merely teaching about, for example, the Tulsa Race Massacre. I think in the supplemental appendix there's an example from Edmond Public Schools in which they reiterate to their teachers that you're not going to violate the statute by teaching about racist events that have occurred in the past. You're only going to violate the statute by affirmatively teaching as true one of these specific concepts or endorsing them. That has been said by school districts. That's not something that the district court constructed? That is something. I believe, I don't know exactly the page number, but it's in the range of page 70 to 80 of our supplemental appendix attached to Edmond Public Schools affidavit in which they're disputing plaintiffs' characterization of their change in their high school literature classes. And I would note that this is a facial vagueness challenge, and the Supreme Court has consistently reiterated that facial challenges are especially difficult to win, and that's because they threaten to short-circuit the ordinary political and judicial processes. And this court in Fabricius just last year emphasized that a statute will not be held facially vague if it has a plainly legitimate sweep, and this statute... What does that mean? I interpret that to mean a good chunk of clearly prescribed conduct that is clear. And here I think it's possible for each of these provisions to list teachings that would clearly violate the statute and would not themselves be vague. Wouldn't every one of these sections, A through H, wouldn't every single one of them be a potential counter-discussion to a teacher who's teaching the various, many, many subjects that are permissible under the safe harbor portion of the statute? Wouldn't each of these eight sections be sort of an offset that a student could say, hey, but what about this concept? Tell me about this and how this concept, because these are concepts, relates to whatever subject you're teaching, whether it's the Tulsa Massacre or anything else that's permissible and required in Oklahoma. What does a teacher do then? Do they have to flip through in their mind the eight different very broad provisions and say, hmm, that's one of those concepts, and what can I say about that? Because I know I can teach it, but I don't know if I can respond to questions about it. I mean, that's just, to me, what makes it vague is the interaction part of this. I think a teacher can control what they plan to teach, what they plan to teach that day, what their schedule is, what their coursework they're planning to lay out. But beyond that, isn't it a little hard for them to anticipate and to understand what they can teach in response to student questions or student discussion amongst themselves? And if one student goes home and talks to their parents about that, do they worry? Am I going to have a job? You know, that's what I worry about. And I just don't see where the statute gives it this narrow, narrow definition that you want to say make part of course. A teacher is making it a part of a course if it responds with a discussion of one of these concepts. I think make part of a course, it's next to require, or make part of a course. And require is defined as to call for as suitable or appropriate or to demand as necessary or essential. And so I think reading those two terms together, it's a readily susceptible, narrowing construction. What does require a concept mean, by the way? That by itself doesn't make any sense. How does a teacher require a concept? To me, that's just a throwaway word. It doesn't make any sense in this discussion. I think there, I would point you to. What does it mean to require a concept? I think to call for as suitable or appropriate for the students to believe that concept or to endorse it within the classroom. And I see that I am running out of time. And so I'll just close by asking that this court affirm the parts of the district court's opinion denying the injunction and reverse the limited injunction. You're out of time, but I'll give you a minute if you have something. I appreciate the court's indulgence. Just one quick point. Picking up on where you left off, Judge Hartz, with the facial challenge and what's the appropriate standard. Defendants put forward Fabrizious. And curiously note that the line of cases that they cite for their standard don't mention Supreme Court cases like Johnson. And that is not because the Tenth Circuit or the Supreme Court meant to overrule Johnson, but it's because they meant to leave Johnson undisturbed. That's what establishes the standard for a facial vagueness challenge. And Justice Alito said that just because you can think of some concept that might fall within these vague provisions doesn't end the vagueness inquiry. And in fact, you can still find a statute to be unconstitutionally vague. And Justice Gorsuch, not just is it possible to succeed in a facial vagueness challenge, but here we argue we should be afforded a heightened standard. And even the district court agreed. As Justice Gorsuch said in DiMaia, where people's livelihoods and licensures are on the line. He's all by himself on that so far, though, isn't he? He's all by himself, but you're welcome to join him. We think he is right. Thank you. Thank you, counsel. Case is submitted. Counsel excused.